1  GERALD SINGLETON, State Bar No. 208783
   BRODY A. McBRIDE, State Bar No. 270852
2  SINGLETON LAW FIRM, APC
3  115 West Plaza Street
   Solana Beach, CA  92075
4  Tel:   (760) 697-1330
5  Fax:   (760) 697-1329
   Email:  gerald@geraldsingleton.com
6          brody@geraldsingleton.com
7
8  Attorneys for Plaintiff DIANA NURICUMBO

9                **UNITED STATES DISTRICT COURT**
10
11              **SOUTHERN DISTRICT OF CALIFORNIA**

12  DIANA NURICUMBO,                     Case No.  **'14 CV 2827 W    BGS**
13            Plaintiff,
14        v.                             **COMPLAINT FOR DAMAGES AND
15                                        VIOLATIONS OF STATE AND
16  CITY OF CALEXICO, Former             FEDERAL CIVIL RIGHTS**
17  Calexico Chief of Police POMPEYO
    TABAREZ, GERMAN DURAN,
18  JUAN RAMIREZ, PETER WEST,            **DEMAND FOR JURY TRIAL**
19  LUIS CASILLAS, RUBEN LOPEZ,
    and DOES 1–25, inclusive.
20
21            Defendants.
22

23  TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD
24        Plaintiff, DIANA NURICUMBO, by and through her attorneys of record,
25  hereby files the following Complaint for damages and violations of her state and
26  federal civil rights against Defendants CITY OF CALEXICO, former Calexico
27  Police  Department  ("CPD")  Chief  POMPEYO  TABAREZ,  CPD  Sergeant
28

                                          1

GERMAN DURAN, CPD Officer JUAN RAMIREZ, CPD Officer PETER WEST, CPD Officer LUIS CASILLAS, CPD Officer RUBEN LOPEZ, and DOES 1–25, inclusive.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over Plaintiff's federal Constitutional claims brought under Title 42 United States Code ("U.S.C.") § 1983 pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 2201.  This Court has supplemental jurisdiction to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

2.     Venue in this Court is proper because the acts complained of occurred in the City of Calexico, which is located in the Southern District of California.

3.     On August 14, 2014, Plaintiff filed a timely claim with the CITY OF CALEXICO under California Government Code §910, *et. seq.* On August 15, 2014, the CITY OF CALEXICO rejected Plaintiff's claim.  Plaintiff filed the instant complaint within six (6) months of this rejection.  Accordingly, Plaintiff has complied with the claims filing requirements of the California Government Code and this complaint is timely under applicable state and federal law.

## PARTIES

4.     Plaintiff DIANA NURICUMBO ("Mrs. NURICUMBO") is a United States citizen who, at all times relevant to this Complaint, resided in the City of Calexico.

5.     Defendant CITY OF CALEXICO ("CITY") is a municipal corporation duly organized under the laws of the State of California located in the County of Imperial.  The Calexico Police Department ("CPD") is the chief law enforcement agency of CITY.

6.     At some times relevant to this Complaint, Defendant POMPEYO TABAREZ ("TABAREZ") was the Chief of Police of the CPD and was a policy-maker.  Although TABAREZ was the CPD Chief at the time the events that form

1  the basis of this complaint occurred, the CITY later fired TABAREZ.

2  7.  At all times relevant to this complaint, Defendant GERMAN DURAN

3  ("DURAN") was a Sergeant with the CPD and an employee of the CITY.  At all

4  times mentioned herein, DURAN acted under color of authority and within the

5  course and scope of his employment and/or agency with Defendant CITY.

6  8.  At all relevant times, Defendant JUAN RAMIREZ ("RAMIREZ")

7  was a police officer with the CPD and an employee of the CITY.  At all times

8  mentioned herein, RAMIREZ acted under color of authority and within the course

9  and scope of his employment and/or agency with CITY.

10  9.  At all relevant times, Defendant PETER WEST ("WEST") was an

11  Officer with the CPD and an employee of the CITY.  At all times mentioned

12  herein, WEST acted under color of authority and within the course and scope of his

13  employment and/or agency with the CITY.

14  10.  At all relevant times, Defendant LUIS CASILLAS ("CASILLAS")

15  was an Officer with the CPD and an employee of the CITY.  At all times

16  mentioned herein, CASILLAS acted under color of authority and within the course

17  and scope of his employment and/or agency with the CITY.

18  11.  At all relevant times, Defendant RUBEN LOPEZ ("LOPEZ") was an

19  Officer with the CPD and an employee of the CITY.  At all times mentioned

20  herein, LOPEZ acted under color of authority and within the course and scope of

21  his employment and/or agency with the CITY.

22  12.  Defendant DOES 1-25 are natural persons and employees of the CITY

23  whose true names/identities and capacities are unknown at this time and/or

24  unknown corporations or entities.

25  13.  Plaintiff is informed and believes, and thereon alleges, that each of

26  said fictitiously named DOE Defendants is responsible in some manner for the

27  acts, omissions, and damages alleged herein.  Plaintiff is unaware of the true names

28  and capacities of the DOE Defendants, and, therefore, sues these Defendants under

1  such fictitious names.

2      14.    Plaintiff is furthermore informed and believes, and thereon alleges,

3  that each of said fictitiously named Defendants was the agent, servant, and

4  employee, of each and every other Defendant acting within the course and scope of

5  his agency and employment and with the knowledge, ratification, and consent, of

6  each respective principal.  Plaintiff will seek leave to amend this Complaint when

7  their true names and capacities have been ascertained.

8                          **GOVERNMENT LIABILITY**

9      15.    Plaintiff alleges that all Defendants carried out the acts complained of

10  in the course and scope of their employment and under color of law.  Defendants

11  RAMIREZ, WEST, CASILLAS, LOPEZ, and DOES 1-10, are sued in their

12  individual capacities.  Defendants TABAREZ and DURAN are sued both in their

13  individual and their official capacities.

14      16.    Regarding all actions and causes of action herein alleged, and stated,

15  all governmental defendants (including all DOE defendants) violated rights held by

16  Plaintiff that were clearly established and which they had a mandatory duty to

17  uphold.  No reasonable official similarly situated to any of the Defendants could

18  have believed that his conduct was lawful or within the bounds of reasonable

19  discretion.  All individual Defendants, including all individual DOE Defendants,

20  thus lack immunity from suit or liability.  This extends both to statutorily created

21  immunity and to the judicially created doctrine of "qualified immunity."

22      17.    The individual Defendants (both named Defendants and DOES) are

23  liable for their conduct to the same extent as a private person under California

24  Government Code §820(a).  This includes, but is not limited to, acts and omissions

25  that constitute negligence under California Civil Code §1714[1], other violations of

26  ────────────

27    [1] Section 1714 reads, "Everyone is responsible, not only for the result of his
or her willful acts, but also for an injury occasioned to another by his or her want of

28  ordinary care or skill in the management of his or her property or person…"

state law (including violations of the common law tort of negligence, common law intentional torts, and violations of state civil rights laws such as the "Bane Act", California Civil Code §52.1, et seq., etc.) and violations of federal law, including federal constitutional law and federal civil rights statutes.

18.     Defendant CITY is liable in *respondeat superior* for the torts of its employees committed during the course and scope of their employment pursuant to Government Code §815.2(a).  This includes, but is not limited to, liability for negligent acts and omissions committed by employees of the CITY while said employees were acting within the course and scope of their employment. Accordingly, the CITY is vicariously liable under Government Code §815.2(a) for all violations of state law (including, but not limited to, intentional torts and violations of California Civil Code §52.1, *et seq.*) by the CPD Officer Defendants alleged herein (including DOE Defendant Officers), because all such conduct occurred while the CPD Officer Defendants were acting within the course and scope of their employment with Defendant CITY.

19.     Defendant CITY is also liable for the violations of Plaintiff's federal constitutional rights brought under 42 U.S.C. § 1983 based upon Plaintiff's *Monell* cause of action.  The bases for Defendant CITY's liability in this context include, but are not limited to, the CPD supervisors' and policy-makers' ratification of the illegal and unconstitutional conduct of their subordinate CPD officers, and the fact that the violation of Plaintiff's rights was the result of an actual or *de facto* policy that encouraged and/or tolerated the violations of citizens' rights by CPD officers. This liability is direct and is based on the causes of action brought against the policy-making Defendants (to wit, former CPD Chief TABAREZ, Sgt. DURAN, and DOE policy-making defendants) in said Defendants' official capacities.

20.     All defendants are jointly and severally liable for all damages awarded (except punitive damages).   Under California Government Code §825(a), Defendant CITY is obligated to pay any compensatory damages and costs awarded

against their employees.

## **GENERAL ALLEGATIONS**

21.    Mrs. NURICUMBO is a 37-year-old mother of four (4) children, who lives with her husband and children in their family's home in Calexico, CA.

22.    Prior to this incident, Mrs. NURICUMBO had never been arrested.

23.    In February 2014, Mrs. NURICUMBO was the President of the non-profit group "Citizens of Calexico for a Transparent Government." Mrs. NURICUMBO and this group led a grass-roots effort to recall two (2) Calexico City Council members, Luis Castro and Joong Kim.

24.    These two city council members, Castro and Kim, had a close relationship with the Calexico Police Officer's Association ("ASSOCIATION"). In February 2014, ASSOCIATION members had been threatening, intimidating, and harassing, members of the recall effort, including Mrs. NURICUMBO.

25.    Several of the CPD officers involved in this case were members of the ASSOCIATION, and, in February 2014, CASILLAS served as the ASSOCIATION's Vice President.

26.    During late 2013 and early 2014, Mrs. NURICUMBO and her husband, Mr. Nuricumbo, were having marital problems.

27.    On the morning of February 16, 2014, Mrs. NURICUMBO woke up very early and noticed that her husband was not there. Mrs. NURICUMBO quickly realized that her husband had not come home the previous night. She then used a phone application to locate her husband. According to the application, Mr. Nuricumbo was in front of a house located near their family business.

28.    Mrs. NURICUMBO drove to that location and found the family's truck parked in front of a house. When she drove past the truck, she saw a women's head in the back seat.

29.    Mrs. NURICUMBO parked her car across the street from the truck, got out of her car, and walked towards the truck. As she got close, she threw her

car keys at the truck. She opened the back door and found her husband *in flagrante delicto* with another woman.

30.     It was obvious to Mrs. NURICUMBO that her husband and the other woman were both very intoxicated and had been awake all night. When either of them spoke, their speech was very slurred. Mr. Nuricumbo and the other woman climbed out of the truck. When they did so, they both stumbled.

31.     Although Mrs. NURICUMBO was understandably upset, she did not have any physical contact with the other woman. After apologizing, the other woman walked inside the home in front of which the truck was parked.

32.     Mr. Nuricumbo was very apologetic and tried to explain himself to his wife. Mrs. NURICUMBO then began walking to her car to leave when Mr. Nuricumbo grabbed her by the arm and held onto her to prevent her from leaving. As he did so, he repeatedly told Mrs. NURICUMBO that he was sorry.

33.     Mrs. NURICUMBO struggled to get free from her husband's hold, including pushing her husband and slapping him in the face. Mrs. NURICUMBO was only able to make it halfway across the street before Mr. Nuricumbo wrapped both of his arms around Mrs. NURICUMBO in a bear hug. As he did so, he continued to apologize.  Mrs. NURICUMBO continued to struggle to get free from his hold.

34.     Mrs. NURICUMBO eventually freed herself and made it to her car. She climbed into the driver's seat and shut the door behind her. However, Mr. Nuricumbo quickly opened the door before she could lock it. Mr. Nuricumbo then held the door open to prevent her from closing it again. Mr. Nuricumbo then wedged his body inside the door so Mrs. NURICUMBO could not close the door.

35.     Mrs. NURICUMBO was eventually able to close her car door and lock it before realizing that she no longer had her car keys, because she had thrown them at the truck when she arrived. Mr. Nuricumbo was still standing right outside the door trying to talk to Mrs. NURICUMBO through the window.

COMPLAINT FOR DAMAGES AND VIOLATION OF CIVIL RIGHTS

36.     Mrs. NURICUMBO then got out of her car again and began searching for her car keys. As she did so, Mr. Nuricumbo followed her and continued to grab her and plead with her to forgive him. He placed her in another bear hug and attempted to turn her around to face him. Mrs. NURICUMBO resisted her husband and slapped him in the arms and face to free herself. She then grabbed a nearby stone and threw it at the windshield of their truck in an attempt to get her husband to stop and leave her alone.

37.     Mrs. NURICUMBO did <u>not</u> throw the brick at her husband and neither Mr. Nuricumbo nor anyone else was anywhere near the spot at which she threw the brick.

38.     The woman with which Mrs. NURICUMBO found her husband in the backseat of the truck called police and reported that Mrs. NURICUMBO and Mr. Nuricumbo were yelling in the street. The woman requested that police respond to the scene.

39.     At least four (4) CPD officers responded to the scene of the incident, including Defendants RAMIREZ, WEST, CASILLAS, LOPEZ, DURAN, and/or DOES 1-10, at approximately 8:00 a.m. on a Sunday morning.  Several of the officers who responded to the scene in this case hold positions of power in the ASSOCIATION, including DURAN, CASILLAS, and RAMIREZ.

40.     Officers DURAN, CASILLAS, and RAMIREZ, were very familiar with Mrs. NURICUMBO and her efforts to recall the two Calexico City Council members, who were political allies of the ASSOCIATION and its members.

41.     RAMIREZ was in charge of the investigation into the incident. During a portion of his investigation, RAMIREZ wore a digital audio recorder that captured much of his investigation.

//

42.     From the audio recording, it is very clear that RAMIREZ and the other CPD officers that helped investigate the incident, including WEST,

COMPLAINT FOR DAMAGES AND VIOLATION OF CIVIL RIGHTS

CASILLAS, LOPEZ, and/or DOES 1-10, were <u>not</u> conducting an objective unbiased investigation into what had occurred that morning. These officers were not interested in discovering the truth of what happened. Rather, the audio makes very clear that from the moment these CPD officers (and ASSOCIATION members) discovered that Mrs. NURICUMBO was involved in this incident, they were focused exclusively on building a case against Mrs. NURICUMBO in retribution for her political views and recall efforts.

43.     In their interviews with the witnesses, RAMIREZ and the other CPD officers that helped investigate the incident, including WEST, CASILLAS, and LOPEZ, and/or DOES 1-10, focused exclusively on Mrs. NURICUMBO and her actions with virtually no questions about Mr. Nuricumbo and his role in the incident.

44.     The audio also captures RAMIREZ and other CPD officers, including WEST, CASILLAS, LOPEZ, and/or DOES 1-10, conspiring to manipulate witnesses to change their story to support booking Mrs. NURICUMBO on false felony charges (including, e.g., assault with a deadly weapon under Cal. Penal Code § 245).

45.     At one point in the audio, RAMIREZ is talking to an unknown CPD officer, when the unknown CPD officer begins discussing manipulating Mr. Nuricumbo at the direction of Defendant Sergeant DURAN to get a statement supporting a false felony charge of Cal. Penal Code §245 against Mrs. NURICUMBO. RAMIREZ can then be heard tapping his digital microphone to remind the unknown CPD officer that his microphone is recording. After the tapping, the two CPD officers stop talking.

46.     Mr. Nuricumbo was very clearly intoxicated during and after the incident. Many of the witness with whom RAMIREZ and the other investigating CPD officers, including WEST, CASILLAS, LOPEZ, and/or DOES 1-10, spoke advised RAMIREZ and the other officers that Mr. Nuricumbo had driven his truck

9

1   during the incident. However, because RAMIREZ and the other CPD officers
2   were so focused on retaliating against Mrs. NURICUMBO, they failed to evaluate
3   Mr. Nuricumbo for driving under the influence of alcohol.

4       47.   Despite Mr. NURIOCUMBO's intoxication, Officers RAMIREZ,
5   WEST, CASILLAS, LOPEZ, and/or DOES 1-10, allowed Mr. Nuricumbo to keep
6   custody of the couple's young son before and after Mrs. NURICUMBO was taken
7   to jail. These officers took several photographs of Mr. Nuricumbo holding the
8   couple's son while the officers questioned Mrs. NURICUMBO and other
9   witnesses. Later, in Mr. Nuricumbo's videotaped interview at the police station,
10  Mr. Nuricumbo can be seen sitting with the couple's young son on his lap during
11  the interview.

12      48.   At the time of the incident, CPD Lieutenant Jesus Serrano was on
13  duty and in charge of the CPD. CPD protocol requires CPD officers to contact the
14  Duty Officer in charge before making arrest decisions, such as the arrest of Mrs.
15  NURICUMBO in this case. However, on the morning of the incident, CPD Officer
16  RAMIREZ did not call CPD Lieutenant Serrano as protocol required. Rather, he
17  called Defendant Sergeant DURAN, an ASSOCIATION member, who was not
18  even on duty at the time.

19      49.   On the audio, CPD Officer RAMIREZ can be heard stating that he
20  "briefed" Defendant Sergeant DURAN on the incident involving Mrs.
21  NURICUMBO. From the audio, it is clear that RAMIREZ and the other CPD
22  officers investigating the incident, including WEST, CASILLAS, LOPEZ, and/or
23  DOES 1-10, were working at the direction of Defendant Sergeant DURAN.

24      50.   Based on the evidence and statements of all witnesses, RAMIREZ and
25  the other CPD officers investigating the incident, including WEST, CASILLAS,
26  LOPEZ, and/or DOES 1-10, did not have probable cause to support arresting and
27  booking Mrs. NURICUMBO on felony charges, including Assault with a Deadly
28  Weapon under Cal. Penal Code § 245.

51.     In the audio, RAMIREZ and the other CPD officers investigating the incident, including WEST, CASILLAS, LOPEZ, and/or DOES 1-10, question Mr. Nuricumbo several times in an attempt to get Mr. Nuricumbo to state that Mrs. Nuricumbo threw a brick at him despite the fact that Mr. Nuricumbo repeatedly advised the CPD officers that he was nowhere near the brick when Mrs. NURICUMBO threw it at the truck. These officers were clearly attempting to manipulate Mr. Nuricumbo into giving a false statement to support false felony charges against Mrs. NURICUMBO.

52.     RAMIREZ specifically asked two (2) other witnesses to the incident if Mrs. NURICUMBO threw the brick at Mr. Nuricumbo. Both witnesses told RAMIREZ that they did not witness that.

53.     In the audio, RAMIREZ himself even states to other unknown CPD officers that they did not have the evidence to support booking Mrs. NURICUMBO on the felony charge of Assault with a Deadly Weapon under Cal. Penal Code § 245.

54.     Nevertheless, despite the complete lack of supporting evidence and witness statements to the contrary, RAMIREZ and the other CPD officers investigating the incident, including WEST, CASILLAS, LOPEZ, and/or DOES 1-10, did eventually book Mrs. NURICUMBO on three (3) very serious and false felony charges, including Assault with a Deadly Weapon, under Cal. Penal Code §245(a)(1), Corporal Injury to a Spouse, under Cal. Penal Code §273.5(a), and Child Abuse under Cal. Penal Code §273a(a).

55.     No reasonable officer in the position of RAMIREZ and the other CPD officers investigating the incident, including WEST, CASILLAS, LOPEZ, and/or DOES 1-10, could have reasonably believed probable cause existed to arrest and book Mrs. NURICUMBO on these three (3) very serious felony charges.

56.     The reason RAMIREZ and the other CPD officers investigating the incident arrested and booked Mrs. NURICUMBO on these three (3) very serious

and false charges, when they knew they did not have probable cause to do so, was as retribution against Mrs. NURICUMBO for her political views and her efforts to recall the two Calexico City Councilmembers, both of whom were allies of the ASSOCIATION.  The moving force behind these CPD officers' actions was their desire to retaliate against Mrs. NURICUMBO for exercising her constitutional rights through the recall effort of the two City Councilmen and to punish and make an example of her for daring to cross the ASSOCIATION and the Councilmembers.

57.   Following their "investigation" into the incident, RAMIREZ and the other CPD officers investigating the incident, including WEST, CASILLAS, LOPEZ, and/or DOES 1-10, then prepared and filed inaccurate, incomplete, and very biased reports, which they forwarded to the Imperial County District Attorney's Office. In these reports, RAMIREZ and the other CPD officers investigating the incident manipulate the facts and witness statements, and omit a number of very important facts, to support their false felony charges and to give the overall false impression that Mrs. NURICUMBO was the aggressor in the incident.

58.   RAMIREZ and the other CPD officers investigating the incident, including WEST, CASILLAS, LOPEZ, and/or DOES 1-10, hoped that their biased investigation and false reports would persuade the Imperial County District Attorney's Office (hereinafter "DA") to charge Mrs. NURICUMBO with these false and very serious felony charges.

59.   Following Mrs. NURICUMBO's arrest, unknown CPD officers, including DOES 1-10, posted information and confidential police records about Mrs. NURICUMBO's arrest in violation of CPD policy on a Facebook Page titled "Calexico Blue Flame Society." One of this Facebook page's main themes is attacking members of the recall effort, such as Mrs. NURICUMBO.

60.   RAMIREZ and the other CPD officers investigating the incident arrested Mrs. NURICUMBO at approximately 9:30 a.m. on Sunday February 16, 2014.   By noon that very same day, the CPD officers had already posted information about Mrs. NURICUMBO's arrest.

61.   Because of the three (3) false and very serious felony charges on which RAMIREZ and the other CPD officers investigating the incident had booked Mrs. NURICUMBO's, her bail was set (per the bail schedule) at $100,000. Mrs. NURICUMBO could not afford that amount, so she was forced to remain in jail until her arraignment, at which point she hoped the court would reduce her bail.

62.   Due to the Presidents' Day holiday on Monday February 17, 2014, Mrs. NURICUMBO was not arraigned until the following Wednesday, February 19, 2014. During that time, Mrs. NURICUMBO was forced to remain in custody, away from her children. This experience was very traumatic for Mrs. NURICUMBO. Prior to this incident, Mrs. NURICUMBO had never been arrested, let alone incarcerated. While in custody, Mrs. NURICUMBO was extremely anxious and depressed, and she missed her family. She worried constantly about her children and whether they were safe.

63.   Despite the CPD officers' biased investigation and false reports, the DA in fact declined to file any of the false felony charges against Mrs. NURICUMBO on which RAMIREZ and the other CPD officers investigating the incident, including WEST, CASILLAS, LOPEZ, and/or DOES 1-10, had booked Mrs. NURICUMBO.

64.   In fact, the DA did not file any felony charges against Mrs. NURICUMBO. Rather, based on the CPD officers' inaccurate, incomplete, and very biased reports, the DA filed two (2) simple misdemeanor charges against Mrs. NURICUMBO.

65.   At her arraignment, Mrs. NURICUMBO's bail was reduced from $100,000 (based on the false felony charges) to only $2,500.  Mrs. NURICUMBO

was then able to afford bail, which she posted immediately.  Nevertheless, she was not ultimately released from jail until late on the night February 19, 2014, over four (4) days after she was originally arrested and booked into jail.

66.    For over five (5) months, Mrs. NURICUMBO was forced to fight these criminal charges that were based on the CPD officers' biased investigation and false reports.  This required a significant amount of time and money.  During this time, Mrs. NURICUMBO feared that she would be convicted of these charges, which carried serious consequences, including significant jail time, large monetary fines, and the loss of her family business.

67.    The DA eventually dismissed both charges against Mrs. NURICUMBO, and Mrs. NURICUMBO pled guilty to what she actually had done, to wit, "disturbing the peace by loud and unreasonable noise."

68.    In committing the acts described above, Defendants DURAN, RAMIREZ, WEST, CASILLAS, LOPEZ, and/or DOES 1-10, violated several of Mrs. NURICUMBO's clearly established constitutional rights while acting under color of authority during the course and scope of their work as CPD Officers. These included violations of rights guaranteed to Mrs. NURICUMBO by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.

## FIRST CAUSE OF ACTION

**42 U.S.C. § 1983 – 14th Amendment Equal Protection Clause**

**(Against Defendants DURAN, RAMIREZ,**

**WEST, CASILLAS, LOPEZ, and DOES 1-10)**

69.    Mrs. NURICUMBO re-alleges all prior paragraphs of this Complaint and incorporates said paragraphs herein by reference as though each were set forth herein in full.

70.    Title 42 U.S.C. § 1983 provides: "Every person who, under color of [law] subjects, or causes to be subjected, any person of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and

14

1    laws shall be liable to the party injured in an action at law [or equity]."

2        71.    The Equal Protection Clause of the Fourteenth Amendment states that

3    no State may "… deny to any person within its jurisdiction the equal protection of

4    the laws."   The Clause's purpose is to protect every person within a State's

5    jurisdiction from intentional and arbitrary discrimination, whether such

6    discrimination is occasioned by a statute's express terms or by its improper

7    execution. *Sioux City Bridge Co.* v. *Dakota County,* 260 U. S. 441, 445 (1923).

8        72.    While the Fourteenth Amendment's historic role has been to prevent

9    discrimination against minorities or groups of people (e.g., freed slaves, etc.), its

10   protections are much broader.   Indeed, the United States Supreme Court has held

11   that the Fourteenth Amendment may give rise to a cause of action on behalf of a

12   "class of one" where the plaintiff does not allege membership in a class or group,

13   but alleges that she has been intentionally treated differently from others similarly

14   situated and that there is no rational basis for such treatment. *See, e.g., Village of*

15   *Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000).

16       73.    Here, Defendant RAMIREZ and the other CPD officers investigating

17   the incident, including WEST, CASILLAS, LOPEZ, and/or DOES 1-10, acting at

18   the direction Sgt. DURAN, and/or on the pursuant to a conspiracy involving

19   DURAN, arrested and booked Mrs. NURICUMBO on three (3) very serious and

20   false charges, when they knew they did <u>not</u> have probable cause to do so.

21       74.    Defendants  DURAN,  RAMIREZ,  WEST,  CASILLAS,  LOPEZ,

22   and/or other unknown CPD officers, including DOES 1-10, personally conspired in

23   the denial of Mrs. NURICUMBO's equal protection rights.

24       75.    Defendant RAMIREZ and the other CPD officers investigating the

25   incident, including WEST, CASILLAS, LOPEZ, and/or DOES 1-10, acting at the

26   direction Defendant DURAN, and/or on the pursuant to a conspiracy involving

27   DURAN, then prepared and filed inaccurate, incomplete, and very biased reports,

28   which they forwarded to the Imperial County District Attorney's Office.

76.   Defendants committed these acts to punish Mrs. NURICUMBO for her political activities in pursuing the recall effort against the two Calexico city council members who were close political allies of these CPD officers and/or the ASSOCIATION and to attempt to intimidate her and other citizens of Calexico. Such a motive is wholly unrelated to any legitimate state or law enforcement objective, and, as a result, clearly improper.

77.   As a direct and proximate cause of the unconstitutional actions of Defendants RAMIREZ, DURAN, WEST, CASILLAS, LOPEZ, and/or DOES 1-10, Mrs. NURICUMBO suffered the injuries and damages alleged herein.  Because Defendants acted with fraud, malice, and oppression, Plaintiff is entitled to recover punitive and exemplary damages against them in an amount sufficient to punish and make an example out of them.

## SECOND CAUSE OF ACTION

### 42 U.S.C.  §1983 - Unlawful Seizure, Arrest, and Detention

### Against Defendants DURAN, RAMIREZ,

### WEST, CASILLAS, LOPEZ, and DOES 1-10)

78.   Plaintiff hereby incorporates the preceding paragraphs by reference as though each were set forth herein in full.

79.   The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

80.   On February 16, 2014, Defendants DURAN, RAMIREZ, WEST, CASILLAS, LOPEZ, and DOES 1-10 illegally seized, detained and arrested Mrs. NURICUMBO without probable cause and/or a warrant.  In so doing, Defendants denied Plaintiff of her constitutional rights under the Fourth Amendment to the United States Constitution.

81.   In committing these acts and omissions, Defendants acted in the course and scope of their employment, and thereby acted under color of law.  At no time did Plaintiff give valid consent to Defendants' unlawful actions, and the rights Defendants were violating were clearly established.

82.   In committing the acts herein, Defendants DURAN, RAMIREZ, WEST, CASILLAS, LOPEZ, and DOES 1-10 acted with malice, oppression and fraud.   Accordingly, Plaintiff is entitled to obtain punitive damages from Defendants FLORES and RAMIREZ in an amount sufficient to punish and deter such conduct, according to proof at the time of trial.

## **THIRD CAUSE OF ACTION**

### **42 U.S.C. § 1983 – *Monell* Claim**

### **(Against Defendants CITY, TABAREZ,**

### **DURAN, and DOE CPD Policy Making Defendants)**

83.   Mrs. NURICUMBO re-alleges all prior paragraphs of this Complaint and incorporates said paragraphs herein by reference as though each were set forth herein in full.

84.   The illegal arrest of, and false charges and reports against, citizens such as Mrs. NURICUMBO, was consistent with the custom and practice endorsed, promulgated, and/or, tolerated by former CPD Chief of Police TABAREZ and/or supervisory DOE Defendants with final policy-making authority, including DURAN and DOES 11-25.

85.   The actions of Defendants DURAN, RAMIREZ, WEST, CASILLAS, LOPEZ, and/or DOES 1-10, were part of a wider pattern and practice of illegal conduct by CPD Officers, including the harassment and wrongful arrest of, individuals like Mrs. NURICUMBO, who are political rivals to the ASSOCIATION, its members, and their allies.

86.   This pattern and practice of illegal conduct, which included wrongful arrests by CPD officers, was approved and/or encouraged by CITY and CPD

17

1  policy makers such as CPD Chief TABAREZ, DURAN, and other policy makers

2  (including DOES 11-25).

3      87.    For example, Sgt. DURAN, with the actual or tacit approval of Chief

4  TABAREZ, controlled the internal affairs unit and used his position to protect

5  CPD officers and ASSOCIATION members who improperly used their positions

6  for the benefit of DURAN, the ASSOCIATION, and other individuals.

7      88.    This custom and practice, and the ratification by the supervisory

8  Defendants with final policy-making authority named herein of the illegal actions

9  performed by rank-and-file CPD Officers pursuant to this policy, was the moving

10  force behind the CPD Officer Defendants' violation of Mrs. NURICUMBO's

11  rights that occurred on February 16, 2014.

12      89.    Accordingly, the CITY is liable for the deprivation of Mrs.

13  NURICUMBO's constitutional rights by the CPD Officer Defendants under

14  *Monell v. Department of Social Services of the City of New York* (1978) 436 U.S.

15  658, and its progeny, which hold that a municipal entity may be held liable for

16  violations of Constitutional rights committed by its law enforcement officers if the

17  violation was based on either:

18      (a)    a widespread practice that, although not authorized by written

19          law or express municipal policy, is "so permanent and well

20          settled as to constitute a custom or usage" with the force of law;

21          or

22      (b)    the fact that the illegal and unconstitutional conduct was ratified

23          by an individual with final policy-making authority.

24      90.    Here, both bases for municipal liability are present.    Mrs.

25  NURICUMBO is informed and believes, and thereon alleges, that the CPD had a

26  departmental policy, custom, or practice (which was promulgated, encouraged,

27  and/or tolerated by the Defendants named herein, to wit, CPD supervisors and

28  those with policy-making authority) of illegally arresting citizens, booking them on

false charges, and filing false reports against them, in violation of these individual's civil rights. CPD supervisors, including DURAN, TABAREZ, and DOES 11-25, approved, encouraged, and/or ratified the illegal conduct, which encouraged other CPD officers to engage in it.

91. On February 16, 2014, Defendants DURAN, RAMIREZ, WEST, CASILLAS, LOPEZ, and/or DOES 1-10, were acting in accordance with the policy of using wrongful arrests against individuals like Mrs. NURICUMBO when they wrongfully arrested her.

92. The decision to illegally arrest, file false charges against, and file false reports against, Mrs. NURICUMBO, was part and parcel of the illegal behavior encouraged or permitted by Defendants DURAN, former CPD Chief of Police TABAREZ, and/or all supervisory DOE Defendants with final policy-making authority, including DOES 11-25.

93. Overall, the pattern and practice of the CPD and of the individuals with final policymaking authority within it (including, but not limited to, former CPD Chief of Police TABAREZ and/or all supervisory DOE Defendants with final policy-making authority, including DOES 11-25) was such that there was a permanent and settled culture, policy, and/or practice, which encouraged the illegal arrest of, and filing false charges and reports against, citizens like Mrs. NURICUMBO. This pattern and practice was a substantial factor in causing the injuries and damages suffered by Mrs. NURICUMBO in the incident alleged herein.

94. When confronted with the illegal arrest of, and the filing of false charges and reports against, Mrs. NURICUMBO, Defendants former CPD Chief of Police TABAREZ and/or all supervisory DOE Defendants with final policy-making authority, including DOES 11-25, not only failed to take corrective action, but also ratified the illegal conduct of the CPD Officer Defendants and other DOE Defendants.

COMPLAINT FOR DAMAGES AND VIOLATION OF CIVIL RIGHTS

95.     Mrs. NURICUMBO asserts liability directly against the CITY, Defendant TABAREZ, and/or all other supervisory CITY employees with final policymaking authority, including DOES 11-25, in their individual and official capacities for the violations set forth herein.

## FOURTH CAUSE OF ACTION

### Violations of the *Bane Act*, California Civil Code §§ 52.1 and 52

### (Against **All** Defendants)

96.     Mrs. NURICUMBO re-alleges all prior paragraphs of this Complaint and incorporates said paragraphs herein by reference as though each were set forth herein in full.

97.     Defendants, and each of them, are liable to Mrs. NURICUMBO for violating her California civil rights enshrined in the *Bane Act*, in that said Defendants interfered by threats, intimidation, and coercion with Mrs. NURICUMBO's rights to freedom of speech, due process, and to be free from false arrest and false imprisonment, as guaranteed by the United States Constitution, the California Constitution, California Civil Code §1708, and California common law, thereby proximately and foreseeably causing Mrs. NURICUMBO's damage, injury, and loss.

98.     Specific violations of the *Bane Act* perpetrated by Defendants against Mrs. NURICUMBO, include, but are not limited to, the following:

(a)     Defendants RAMIREZ, WEST, CASILLAS, LOPEZ, and/or DOES 1-10, acting at the direction Defendant DURAN, wrongfully arresting and booking Mrs. NURICUMBO on three (3) very serious and false charges, by threats, intimidation, or coercion, when they knew they did not have probable cause to do so;

(b)     Defendants RAMIREZ, WEST, CASILLAS, LOPEZ, and/or DOES 1-10, acting at the direction Defendant DURAN,

20

preparing and filing false reports, which they forwarded to the Imperial County District Attorney's Office for the purpose of inducing the DA's office to file non-meritorious charges against Plaintiff;

(c) Defendants' attempts to intimidate Mrs. NURICUMBO from exercising her right to freedom of speech, which is protected by the First Amendment of the Constitution of the United States, by falsely arresting Mrs. NURICUMBO and booking her on false charges;

(d) Defendants' actions in deliberately filing numerous felony charges which they knew to be false for the purpose of wrongfully increasing Plaintiff's bail under the bail schedule, thereby causing Plaintiff to remain in custody for several days; and

(e) The conduct of Defendants, former CPD Chief of Police TABAREZ and/or all supervisory DOE Defendants with final policy-making authority, including DOES 11-25, in ratifying and/or condoning the individual CPD Officer Defendants illegal and unconstitutional conduct with respect to Mrs. NURICUMBO.

99. California Civil Code §52.1(a) provides that if a person interferes, or attempts to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of the constitutional or statutory rights of "any individual or individuals," the Attorney General, or any district or city attorney, may bring a civil action for equitable or injunctive relief. California Civil Code § 52.1(b) allows "[a]ny individual" so interfered with to sue for damages. California Civil Code § 52.1(g) states that an action brought under § 52.1 is "independent of any other action, remedy, or procedure that may be available to an aggrieved individual under

1   any other provision of law," including California Civil Code § 51.7.

2       100.   Pursuant to California Civil Code §§52(a) and (b), Plaintiff is entitled

3   to up to three times her actual damages, and to exemplary damages; to a civil

4   penalty of $25,000 for each violation of her rights; and to attorney's fees in an

5   amount to be determined by the Court.

6       101.   At the time CPD Officer Defendants named herein performed the acts

7   and omissions alleged herein, they were acting within the course and scope of their

8   employment with Defendant CITY.   Accordingly, the CITY is liable for the CPD

9   Officer Defendants' conduct under California Government Code §815.2(a) and

10  §820.

11      102.   The remaining Defendants, former CPD Chief TABAREZ and/or all

12  supervisory DOE Defendants with final policy-making authority, including DOES

13  11-25, are liable because they aided and abetted and/or ratified the conduct of CPD

14  Officer Defendants that violated Mrs. NURICUMBO's rights under California Civil

15  Code § 52.1, *et seq.*

16      103.   The acts and omissions of Defendants, and each of them, were a

17  proximate and substantial cause of the injuries and damages alleged herein by Mrs.

18  NURICUMBO.

19      **FIFTH CAUSE OF ACTION**

20  **Negligence – California State Tort Law Claim**

21  **(Against <u>all</u> Defendants)**

22      104.   Mrs. NURICUMBO re-alleges all prior paragraphs of this Complaint

23  and incorporates said paragraphs herein by reference as though each were set forth

24  herein in full.

25      105.   CPD Officer Defendants RAMIREZ, WEST, CASILLAS, LOPEZ,

26  and/or DOES 1-10, breached their duties to Mrs. NURICUMBO to exercise

27  reasonable care (pursuant to California common law and California Civil Code

28  §1714) in the performance of their official duties, including their duties to comply

with agency orders, policies, regulations, and trainings, thereby proximately and foreseeably causing Mrs. NURICUMBO's injuries, damages, and losses.

106.   In perpetrating the acts and omissions described herein, the CPD Officer Defendants knew, or in the exercise of reasonable care and prudence, should have known, that their actions likely would result in Mrs. NURICUMBO suffering harm.

107.   As peace officers of the CPD, the CPD Officer Defendants owed a duty to Mrs. NURICUMBO to avoid falsely arresting and imprisoning her, filing false charges against her, and filing false reports against her.

108.   Former CPD Chief of Police TABAREZ and/or all supervisory DOE Defendants with final policy-making authority, including DOES 11-25, had a duty to properly train, supervise, and control their subordinate officers, including the CPD Officer Defendants named herein, and to prevent them from falsely arresting and imprisoning, filing false charges against, and filing false reports against, Mrs. NURICUMBO, and/or otherwise violating Mrs. NURICUMBO's civil rights.

109.   Former CPD Chief of Police TABAREZ and/or all supervisory DOE Defendants with final policy-making authority, including DOES 11-25, had a duty to properly review the conduct of CPD Officer Defendants, to discipline and/or punish improper conduct by the CPD Officer Defendants, and to refrain from ratifying Defendants' illegal and unconstitutional conduct.

110.   Finally, all CPD Officer Defendants further had a duty to obey all state, local, and federal laws, and to avoid exceeding the scope of their authority in their dealings with Mrs. NURICUMBO.

111.   In performing the acts and omissions alleged herein above, the CITY Defendants breached the duty of care they owed to Mrs. NURICUMBO and all citizens of the CITY.  These acts and omissions by Defendants included, but are not limited to, the conduct previously set forth herein and the following specific acts:

112.   Said breaches of their duty of care by Defendants, and each of them, were a direct and proximate cause of the injuries and damages suffered by Mrs. NURICUMBO.   As a direct and proximate result of the actions of these Defendants, and each of them, Mrs. NURICUMBO sustained physical and emotional injury in excess of the jurisdictional limits of this court.

113.   The acts of confirming and ratifying the conduct of subordinate officers by former CPD Chief of Police TABAREZ and/or all supervisory DOE Defendants with final policy-making authority, including DOES 11-25, were undertaken with the actual and/or constructive knowledge that Mrs. NURICUMBO's physical and emotional distress would thereby increase and was done with a wanton and reckless disregard for the consequences to Mrs. NURICUMBO.

114.   The acts and omissions committed by CITY Defendants set forth herein constitute violations, *inter alia*, of California's common law prohibition against negligence, California's negligence statute (California Civil Code §1714), and other state and federal laws.

115.   In performing the acts and omissions set forth herein, all individual Defendants, including DOE Defendants, were acting within the course and scope for their employment for the CPD and the CITY.   Accordingly, the CITY is liable for the acts and omissions committed by their employee CPD Officers sued herein pursuant to California Government Code §815.2(a) and §820.

## SIXTH CAUSE OF ACTION

**Negligent Hiring, Retention, Supervision, and Control**

**(Against Defendants CITY, TABAREZ,**

**DURAN, and DOE CPD Policy Making Defendants)**

116.   Mrs. NURICUMBO re-alleges all prior paragraphs of this Complaint and incorporates said paragraphs herein by reference as though each were set forth herein in full.

COMPLAINT FOR DAMAGES AND VIOLATION OF CIVIL RIGHTS

117.   Defendant CITY is liable under *respondeat superior* for the negligent acts and omissions of its officers, agents, and/or employees, including DOE Defendants 1-25, as set forth in Government Code §815.2(a) and §820(a).

118.   At all times set forth herein, the CITY's employees, including DOES 1-25, were acting within the course and scope of their employment with the CITY. The CITY is liable for both the negligent and intentional acts and omissions of its employees, which were committed within the course, and scope of their employment. *See, e.g., Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202; *Lloyd v. County of Los Angeles* (2009) 172 Cal.App.4th 320, 330.

119.   Supervisory Defendants employed by the CITY, including TABAREZ, DURAN, and DOES 11-25, are liable both for their own negligent acts and omissions and because they failed to properly supervise and control the CITY and CPD employees under their control, including, but not limited to Defendants RAMIREZ, DURAN, WEST, CASILLAS, LOPEZ, and/or DOES 1-10.

120.   In perpetrating the acts described herein above, Defendants, and each of them, knew, or in the exercise of reasonable care and prudence, should have known, that their actions likely would result in Plaintiff suffering harm, including, but not limited to, physical and mental pain-and-suffering, mental anguish and mental and emotional distress.

121.   At all times relevant to this complaint, Defendants, and each of them, owed a duty to Mrs. NURICUMBO to avoid subjecting her to unreasonable risks of harm while performing their duties as sworn law enforcement officers for the CITY.

122.   Defendants CITY, TABAREZ, and DOES 11-25, breached the duty they owed to Mrs. NURICUMBO by negligently and carelessly hiring, retaining, and promoting, and by failing to properly supervise, train, and control, Defendants TABAREZ, DURAN, RAMIREZ, WEST, CASILLAS, LOPEZ, and/or DOES 1-

10.

123.   Defendants CITY, TABAREZ, DURAN, and DOES 11-25, breached the duty they owed to Mrs. NURICUMBO by failing to appropriately discipline, supervise, manage, direct, and/or control, the officers, agents, and employees of the CPD, including, but not limited to, Defendants TABAREZ, RAMIREZ, DURAN, WEST, CASILLAS, LOPEZ, and/or DOES 1-10.

124.   At all times relevant to this complaint, Defendants CITY, TABAREZ, DURAN, and DOES 11-25, and each of them, had actual or constructive knowledge and knew, or, in the exercise of reasonable care, should have known that Defendants TABAREZ, RAMIREZ, DURAN, WEST, CASILLAS, LOPEZ, and/or DOES 1-10, were unfit and/or incompetent, and that this unfitness or incompetence created a particular risk to others, including Mrs. NURICUMBO.

125.   The unfitness and/or incompetence of Defendants TABAREZ, DURAN, RAMIREZ, WEST, CASILLAS, LOPEZ, and/or DOES 1-10, harmed Mrs. NURICUMBO.

126.   The negligence of Defendants CITY, DURAN, TABAREZ, and DOES 11-25 in hiring, supervising, failing to properly train, and/or retaining Defendants TABAREZ, RAMIREZ, WEST, DURAN, CASILLAS, LOPEZ, and/or DOES 1-10, was a substantial factor in causing the harm to Mrs. NURICUMBO.

127.   The negligence of Defendants CITY, TABAREZ, and DOES 11-25, in failing to appropriately retain, discipline, supervise, manage, direct, and/or control Defendants TABAREZ, RAMIREZ, WEST, CASILLAS, LOPEZ, and/or DOES 1-10, was a substantial factor in causing the harm to Mrs. NURICUMBO.

128.   As the direct and proximate result of the negligence of the CITY, TABAREZ, and DOES 11-25, Mrs. NURICUMBO sustained the injuries and damages alleged herein.

//

COMPLAINT FOR DAMAGES AND VIOLATION OF CIVIL RIGHTS

## SEVENTH CAUSE OF ACTION

### False Imprisonment - California State Law Tort Claim

### (Against the CITY, DURAN, RAMIREZ,

### WEST, CASILLAS, LOPEZ, and DOES 1-10)

129.   Plaintiff hereby incorporates the preceding paragraphs by reference as though each were set forth herein in full.

130.   On February 16, 2014, Defendants DURAN, RAMIREZ, WEST, CASILLAS, LOPEZ, and DOES 1-10 falsely imprisoned Plaintiff.

131.   Defendants acted without a warrant, probable cause, reasonable grounds, or other justification under California law, thereby proximately and foreseeably causing Plaintiff to suffer damages, injury, and loss.

132.   By alleging charges which they knew, or, in the exercise of reasonable care, should have known, to be false, Defendants intended to (and did) increase the amount of Plaintiff's bail under the controlling bail schedules to an amount which Plaintiff could not pay.  This caused Plaintiff to have to remain in custody for four (4) days.

133.   At the time Defendants falsely imprisoned Plaintiff, they were acting within the course and scope of their employment with Defendant CITY. Accordingly, the CITY is liable for their conduct under California Government Code §815.2(a) and §820.

134.   In committing the acts herein, Defendants DURAN, RAMIREZ, WEST, CASILLAS, LOPEZ, and DOES 1-10 acted with malice, oppression and fraud. Plaintiff is entitled to obtain punitive damages against Defendants in an amount sufficient to punish and deter such conduct, according to proof at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

//

COMPLAINT FOR DAMAGES AND VIOLATION OF CIVIL RIGHTS

(1)   For general and special compensatory damages (including direct, indirect, and emotional damages), presumed damages, and nominal damages, against <u>all</u> Defendants, in an amount to be determined by the trier of fact.

(2)   For punitive damages against Defendants DURAN, RAMIREZ, WEST, CASILLAS, LOPEZ, and DOES 1-10 only.

(3)   For three times the actual damages awarded, and for a civil penalty of $25,000 for each violation which occurred, pursuant to Cal. Civil Code §52.1 and §52(a) and (b);

(4)   For reasonable attorney fees and costs and expenses of litigation, pursuant to California Civil Code §51, et seq., 42 United States Code §§ 1983-1988, and any and all other relevant statutory or case law.

(5)   For any and all other relief, including interest and/or injunctive relief, to which Mrs. NURICUMBO may be entitled under law or equity and which this Court may determine is appropriate under the facts of this case.

Respectfully Submitted,

SINGLETON LAW FIRM, APC

Dated:   November 24, 2014          By:     _/s/ Gerald Singleton_
GERALD SINGLETON
BRODY A. McBRIDE
Attorneys for Plaintiff DIANA NURICUMBO

COMPLAINT FOR DAMAGES AND VIOLATION OF CIVIL RIGHTS

1

## **DEMAND FOR JURY TRIAL**

2      Mrs. NURICUMBO hereby respectfully requests a jury trial on each and

3   every cause of action set forth in her Complaint.

4                                    Respectfully Submitted,

5                                    SINGLETON LAW FIRM, APC

6

7   Dated:   November 25, 2014          By:    ___/s/ Gerald Singleton____

8                                            GERALD SINGLETON
                                             BRODY A. McBRIDE
9                                    Attorneys for Plaintiff DIANA
                                     NURICUMBO
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Damages and Violation of Civil Rights