UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA NURICUMBO,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF CALEXICO, et al.<br><br>　　　　　　　Defendants. | Case No.:  14-CV-2827-W-PCL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS [DOCS. 45, 46, 47]** |

　　　Pending before the Court are Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff Diana Nuricumbo opposes.

　　　The Court decides the matters on the papers submitted and without oral argument under Civil Local Rule 7.1(d.1).  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions [Docs. 45, 46, 47].

I.　**BACKGROUND**

　　　Defendants are the City of Calexico, former Police Chief Pompeyo Tabarez, Police Sergeant German Duran, and Police Officers Ruben Lopez, Juan Ramirez, and Peter West.  Plaintiff is Diana Nuricumbo, a 37 year–old mother of four who resides with her

husband and children in their family's home in Calexico, California. (*First Amended Compl.* ("FAC") [Doc. 43] ¶ 3.) At the time of the incident, Mrs. Nuricumbo was a small business owner and a secretary with the Imperial County Sheriff's Department. (*Id.* ¶ 3.)

At some point before February 2014, Mrs. Nuricumbo joined and helped lead a non-profit group called "Citizens of Calexico for a Transparent Government," which targeted the removal of two Calexico City Council Members, Luis Castro and Joong Kim. (*FAC* ¶ 4.) She alleges the two councilmen were supported by Police Chief Tabarez and Sergeant Duran, who had strong ties with the Calexico Police Officers Association ("POA"). (*Id.* ¶ 2.) Mrs. Nuricumbo also filed a complaint against Castro and Kim with the Fair Political Practices Commission, and filed a formal accusation of political corruption with the Federal Bureau of Investigation ("FBI"), which has since launched multiple, ongoing investigations. (*Id.*)

On the morning of February 16, 2014, Mrs. Nuricumbo and Mr. Nuricumbo were involved in a marital dispute. (*FAC* ¶ 53.) Officer Defendants Ramirez, West, Casillas, and Lopez arrived in response to a report of arguing on the street and recognized Mrs. Nuricumbo. (*Id.* ¶ 54.) After arriving, the officers called Sergeant Duran, who was off duty. (*Id.* ¶ 56). Sargent Duran instructed the officers to obtain a witness statement that would support a felony charge of assault with a deadly weapon. (*Id.* ¶ 57.)

Mrs. Nuricumbo also alleges that while at the scene, Officer Ramirez's lapel audio recorder captured the "Defendant officers eliciting biased, one-sided statements from witnesses in an attempt to manufacture false charges against" her. (*FAC* ¶ 57.) For example, Mrs. Nuricumbo alleges the officers attempted "to get Mr. Nuricumbo to state that [she] threw a brick at him . . . despite the fact that Mr. Nuricumbo repeatedly advised the CPD officers that he was nowhere near the brick when Plaintiff threw it at the truck." (*Id.* ¶ 58.) Two other witnesses also stated they did not see Mrs. Nuricumbo throw a brick at Mr. Nuricumbo. (*Id.*)

Despite the lack of evidence to support a charge for assault with a deadly weapon, the officers arrested Mrs. Nuricumbo and booked her for assault with a deadly weapon,

corporal injury to a spouse, and child abuse. (*FAC* ¶ 62.) The officers then posted confidential arrest information on a Facebook page for "Calexico Blue Flame Society." (*Id.* ¶ 68.) The FAC also alleges that the officers "prepared and filed inaccurate, incomplete, and very biased reports, which they forwarded to the Imperial County District Attorney's Office," hoping their "biased investigation and false reports would persuade the DA to charge [Mrs. Nuricumbo] with these false and very serious felony charges." (*Id.* ¶ 61.)

In the meantime, because the officers booked Mrs. Nuricumbo on the three felony charges, her bail was set at $100,000. (*FAC* ¶ 65.) She could not afford the $100,000 bail and, therefore, remained in jail until her arraignment on February 19, 2014. (*Id.* ¶ 65.) At that time, the DA refused to charge Mrs. Nuricumbo with the felonies, instead charging her with two misdemeanors. (*Id.* ¶ 63.) Mrs. Nuricumbo was released from jail, and eventually pled guilty to "disturbing the peace by loud and unreasonable noise." (*Id.* ¶¶ 63, 66.)

On November 26, 2014, Mrs. Nuricumbo filed this lawsuit. On January 15, 2015, the City moved to dismiss the Complaint arguing the claims were barred under Heck v. Humphrey, 512 U.S. 477 (1994). On May 8, 2015, the other Defendants also filed motions to dismiss. On July 23, 2015, the Court agreed with the City's argument that the primary thrust of Mrs. Nuricumbo's complaint was that the officers lacked probable cause to arrest her, and dismissed the complaint without leave to amend as to the claims for unlawful arrest and false imprisonment. (*See July 23, 2015 Order* [Doc. 42].) However, Mrs. Nuricumbo was given leave to amend as to the remaining claims. (*Id.*)

Mrs. Nuricumbo filed the FAC on August 14, 2015, asserting the following seven causes of action: (1) 42 U.S.C. § 1983 – 1st and 14th Amendment – Equal Protection; (2) 42 U.S.C. § 1983 – *Monell* – Unconstitutional Pattern and Practice; (3) 42 U.S.C. § 1983 – *Monell* – Ratification by Final Policymaker; (4) 42 U.S.C. § 1983 – *Monell* – Failure to Train, Supervise, Discipline; (5) California Civil Code § 52.1, *Bane* Act; (6) Negligence; and (7) Negligent Hiring, Retention, Supervision, and Control. Mrs.

Nuricumbo alleges she was falsely booked as retribution for her political views and her efforts to remove certain city council officials. (*FAC* ¶¶ 52–63.) She also contends that while the arresting officers were investigating the incident, they manipulated facts and witness statements in an attempt to support the erroneous felony charges. (*Id.* ¶¶ 56–61.) Additionally, the FAC claims numerous instances in which other Calexico citizens' rights were allegedly violated as a result of the Calexico Police Department's ("CDP") failure to investigate, provide adequate leadership, supervise, discipline and train. (*Id.* ¶¶ 33, 41–49, 70–71.)

All of the Defendants now seek to dismiss the FAC. Mrs. Nuricumbo opposes their motions.

## II.     LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. White v. Twentieth Century Fox Corp., 572 Fed. Appx.475, 476 (9th Cir. 2014) (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)). In ruling on the motion, a court takes as true all allegations of material fact in the complaint, construing them in the light most favorable to the non-moving party. See Aguayo v. U.S. Bank, 653 F.3d 912 (9th Cir. 2011).

However, the Court is not required to "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Gonzalez v. Planned Parenthood of L.A., 759 F.3d 1112, 1115 (9th Cir. 2014) (quoting Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the

complaint's allegations must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

### III.  DISCUSSION

#### A.  Section 1983 Claims

##### 1.  *Heck v. Humphrey* does not bar Plaintiff's section 1983 claims.

Defendants argue that Mrs. Nuricumbo's causes of action are still premised on the lack of probable cause for her arrest and, therefore, barred by Heck v. Humphrey, 512 U.S. 477 (1994). (*Duran's MTD* [Doc. 45-1] 6:7–11; *City's MTD* [Doc. 46-1] 5:1–2; *Tabarez's MTD* [Doc. 47-1] 1:16–3:2.) In support of this argument, Defendants contend that the "essence of the FAC is based upon Plaintiff's alleged false arrest and attempting to plead around this critical and previously admitted fact may be construed as sham pleading." (*Duran's MTD* 6:9–11.) Mrs. Nuricumbo responds that Heck does not bar her claims because her "guilty plea does **not** depend on whether CPD officers were motivated by corruption or acted in retaliation for Plaintiff's political speech. . . ." (*Opp.* [Doc. 50] 8:22–23 (emphasis in original).) For the reasons that follow, the Court agrees with Mrs. Nuricumbo.

In support of her opposition, Mrs. Nuricumbo relies on two Ninth Circuit cases. The first case is Cabrera v. City of Huntington Park, 159 F.3d 374 (9th Cir. 1998). There, the plaintiff filed a section 1983 action against the city and police officers, asserting claims for false arrest and imprisonment, excessive force, and cover-up of alleged Fourth Amendment violations. Defendants filed a motion to dismiss arguing the claims were barred by the statute of limitations. Because plaintiff had not challenged his conviction, the Ninth Circuit first had to determine whether Heck applied to any of the 1983 claims because, if so, the claim would not yet have accrued and would be timely.

If, however, Heck applied to the claim, it would have accrued and the statute of limitations expired.

With respect to plaintiff's claims for false arrest and imprisonment, the court explained that plaintiff would "have to demonstrate that there was no probable cause to arrest him" and, therefore, Heck applied.  However, the court found the excessive-force claim and official cover-up claim (which was based on the alleged preparation of "false and misleading reports on the incident' and falsified evidence") would not "necessarily imply the invalidity of [plaintiff's] conviction," and thus Heck did not apply.  Id. at 381.

Defendants argue Cabrera does not support Mrs. Nuricumbo because the official cover-up claim was based on completely different facts from the claim for false arrest / imprisonment.  (*City's Reply* [Doc. 55] 2:17–18.)  But nothing in Cabrera supports this contention; there is simply no indication that the two claims were based on "completely different facts."  Rather, the only description of the cover-up claim was that it was based on the allegation that "the defendants created 'false and misleading reports on the *incident*,'" which presumably refers to plaintiff's arrest.  See id. at 381 (emphasis added).  Thus, contrary to Defendants' argument, the official cover up claim and false arrest / imprisonment claim appear to arise from the exact same facts.  Accordingly, Cabrera appears to support Mrs. Nuricumbo's contention that Heck does not bar her section 1983 claim based on the officer Defendants' preparation and filing of false reports.

The second case Mrs. Nuricumbo relies on is Ove v. Gwinn, 264 F.3d 817 (9th Cir. 2001).  In Ove, plaintiffs were arrested for suspicion of driving under the influence of alcohol, and were subjected to blood tests.  One plaintiff pled guilty, while another pled nolo contendere to the charges.  Plaintiffs then filed a section 1983 lawsuit challenging the manner in which their blood was drawn.  The district court granted defendants' motion to dismiss under Heck.

On appeal, the Ninth Circuit explained that "a district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed . . . [citation

omitted].” Id., 264 F.3d at 822.  The court continued, "[h]owever, . . . if a 'plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.  [Citation omitted.]" Id.  The Ninth Circuit then found that Heck did not apply to plaintiffs' section 1983 claims:

> … it is apparent that the plaintiffs' lawsuit, even if successful, would not necessarily imply the invalidity of Ove and Forest's DUI convictions.  Their lawsuit concerns the way in which their blood was drawn.  But the blood evidence was not introduced against them.  *No* evidence was introduced against them.  They pleaded guilty or nolo contendere, respectively.  *Their convictions derive from their pleas, not from verdicts obtained with supposedly illegal evidence*.  The validity of their convictions does not in any way depend upon the legality of the blood draws.

Id. at 823 (emphasis in original).

Under Ove, this Court must consider whether a judgment in favor of Mrs. Nuricumbo would necessarily imply the invalidity of her conviction for the misdemeanor disturbing the peace.  Defendants, as the moving party, bear the burden on this issue. Their motions, however, fail to demonstrate that Mrs. Nuricumbo's claim that the officer Defendants prepared false and misleading reports, and falsified evidence would imply the invalidity of her guilty plea.  Nor has the Court been able to discern how her claim impugns the validity of her conviction.

Moreover, similar to the plaintiff in Ove, Mrs. Nuricumbo pled guilty.  Therefore, if she ultimately proves the officers created false reports and falsified evidence to support felony charges, the validity of her conviction for the misdemeanor would not seem to be impugned.  For these reasons, the Court finds Heck does not bar her section 1983 cause of action.[1]

---

[1] Defendants also point out that in Smithart v. Towery, 79 F.3d 951 (9th Cir. 1996), the Ninth Circuit held Heck barred a section 1983 claim for bringing unfounded criminal charges. (*Duran's Reply* [Doc. 51] 2:5–8.)  But the decision is extremely short, and includes virtually no discussion regarding the facts of the case.  It is, therefore, unclear whether plaintiff's conviction and arrest stemmed from the

**2.     Plaintiff has failed to state an equal protection claim.**

In support of her section 1983 cause of action, Mrs. Nuricumbo alleges the Officer Defendants violated her equal protection rights. Defendants respond that Mrs. Nuricumbo's claim, based on a class-of-one theory, is defective because she failed to sufficiently plead she was treated differently than other similarly situated persons.[2]

The equal protection clause requires persons similarly situated to be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection violation by demonstrating that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Enquist v. Oregon Dept. of Agr., 553 U.S. 591, 601–02 (2008). "An Equal Protection claim based on a 'class of one' requires a plaintiff to allege that she has been (1) intentionally treated differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment." Solis v. City of Fresno, 2011 WL 5825661, *6 (E.D. Cal., 2011) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). With respect to the differential-treatment element, the plaintiff must demonstrate that "the level of similarity between plaintiff and the persons with whom they compare themselves must be extremely high." Id. at *7 (citations omitted). This requires the plaintiff to establish,

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of mistake.

---

same criminal charges. If so, plaintiff's claim that the charges were unfounded would clearly impugn the validity of the conviction, but the case would not assist where, as here, the plaintiff's conviction and arrest stemmed from *different* criminal charges. For this reason, the Court is not persuaded that Smithart controls this case.

[2] Defendants also point out that Mrs. Nuricumbo does not allege she was discriminated against on the basis of her membership in a protected class and thus focus on the class-of-one theory. (*Duran MTD* n. 1.) She does not dispute her equal-protection claim is based entirely on a class-of-one theory.

Id. (citations omitted).

Here, Mrs. Nuricumbo contends that she sufficiently pled the differential-treatment element, and points to paragraphs 70 and 71 of the FAC. (*Opp.* 13:15–26.) But the cited paragraphs concern another person who was allegedly harassed by the officer Defendants. (*See FAC* ¶¶ 70, 71.) The allegations do not identify an individual, similar to Mrs. Nuricumbo (i.e., someone disturbing the peace), who was treated differently (i.e., not arrested). Accordingly, Mrs. Nuricumbo has failed to state an equal-protection claim based on a class-of-one theory.

### 3. Mrs. Nuricumbo has alleged a First Amendment claim.

In support of her section 1983 cause of action, Mrs. Nuricumbo also alleges the officer Defendants violated her First Amendment right because they arrested her in order to chill her exercise of free speech. Defendants contend this claim lacks merit because Mrs. Nuricumbo failed to plead facts suggesting the officers arrested her to deter her free speech. (*Duran MTD* 12:18–25.)

To state a First Amendment claim, plaintiff must allege facts showing the officers' actions (1) deterred or chilled her speech and (2) such deterrence was a substantial or motivating factor in the officers' conduct. Mendocino Envtl. Ctr. v. Mendocino Cty., 192 F.3d 1283, 1300 (9th Cir. 1999).

Mrs. Nuricumbo alleges that before her arrest, she joined and helped lead a non-profit group called "Citizens of Calexico for a Transparent Government," which targeted the removal of two councilmen who were supported by Chief Tabarez and Sergeant Duran. (*FAC* ¶¶ 2, 4.) Mrs. Nuricumbo also filed a complaint against the councilmen with the Fair Political Practices Commission, and filed a formal political corruption claim with the FBI, which has since launched multiple, ongoing investigations. (*Id.*)

Mrs. Nuricumbo also alleges that the officers who arrived at the scene knew her and called Sergeant Duran, who was off duty. (*FAC* ¶ 56). Officer Duran then instructed the officers to obtain a witness statement that would support a felony charge of assault

with a deadly weapon. (*Id.* ¶ 57.) She further alleges that despite the lack of evidence to support the charge for assault with a deadly weapon, the officers arrested Mrs. Nuricumbo and booked her on assault with a deadly weapon, corporal injury to a spouse, and child abuse. (*Id.* ¶ 62.) The officers then immediately posted confidential arrest information on a Facebook page for "Calexico Blue Flame Society." (*Id.* ¶ 68.) As a result of the alleged false report and trumped up charges, Mrs. Nuricumbo contends her bail was set at $100,000, which resulted in a longer detention. (*Id.* ¶¶ 63, 65.) Based on these allegations, it is reasonable to infer that the officer Defendants prepared the false reports and falsified evidence in order to punish Mrs. Nuricumbo for her political speech. Additionally, Mrs. Nuricumbo contends Defendants' conduct deterred her from pursuing further opposition against the officers' political allies. (*Id.* ¶ 79.) Accordingly, the Court finds she has adequately alleged a 1983 causes of action based on the First Amendment violation.

### B. Claims Against Tabarez

The FAC asserts three *Monell* causes of action, a negligence cause of action, and negligent hiring, retention, supervision and control cause of action against former Chief Tabarez. He seeks to dismiss all of the causes of action. In her opposition, Mrs. Nuricumbo agrees to dismiss the *Monell* causes of action, but not the negligence causes of action. (*Opp.* 16:17–17:9.) Accordingly, the Court need only address Tabarez's arguments regarding negligence.

Tabarez contends that he is immune under California Government Code § 815(a) from Mrs. Nuricumbo's common-law negligence claims because the FAC fails to (1) allege facts demonstrating he was a direct participant in the "events in question" or (2) a separate statutory basis for negligence liability. (*Tabarez's MTD* 8:7–9:11.) Although Mrs. Nuricumbo does not identify a separate statutory basis for negligence liability, she contends the FAC sufficiently pleads his participation.

A police chief "can be held liable in his individual capacity 'for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation[;] or for conduct that showed a reckless or callous indifference to the rights of others.'" Blankenhorn v. City of Orange, 485 F.3d 463, 485 (9th Cir. 2007) (quoting Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir.1998) (quoting Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991))). Thus, if an officer uses excessive force, the police chief may only be liable as supervisor if he or she "'set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury.' [Citation omitted.]" Id. (quoting Larez, 946 F.2d at 646).

Here, Mrs. Nuricumbo alleges that under Tabarez's leadership, the CPD was involved in a widespread pattern of violating Calexico citizens' rights. The FAC identifies three instances where officers allegedly violated the constitutional rights of individuals. (FAC ¶¶ 41–46.) Similar to Mrs. Nuricumbo's claim, one of the incidents involved CPD officers' pursuit of meritless charges, and Chief Tabarez's direct participation in retaliating against the individual for filing a lawsuit. (Id. ¶ 44.) Additionally, Mrs. Nuricumbo contends Chief Tabarez had a notebook "containing information that clearly demonstrated a pattern of 'retaliation against people in the department who were'" attempting to "hold accountable a police officer with ties to those leading the City. . . ."   (Id. ¶ 37.)

Mrs. Nuricumbo also alleges under Chief Tabarez, sergeants were improperly "given authority and responsibility for overseeing the CPD's investigations (i.e., detective) unit[,]" which she contends is a role that should be given to a higher-ranking officer. (FAC ¶ 32.) The lack of supervision and training resulted in officers who "wrote inaccurate reports, they wrote false reports, and sometimes they refused to write any report, despite the fact that a serious incident had occurred." (Id. ¶ 36.) These allegations

also relate directly to Mrs. Nuricumbo's claims, which are based in part on the officers' alleged preparation of inaccurate and false reports concerning the investigation.

Construing the above facts in favor of Mrs. Nuricumbo, the FAC sufficiently alleges that Chief Tabarez's action or inaction in supervising and training his officers, including the allegations of retribution, suggest at least a reckless or callous disregard regarding the rights of others. For these reasons, the motion to dismiss the state law claims against Tabarez is denied.

### C. Monell Claims

Mrs. Nuricumbo alleges three separate causes of action against the City under Monell: (1) her constitutional rights were "violated as a resulted of a widespread pattern and practice of encouraging and tolerating the violation of citizens' constitutional rights;" (2) the City's final policy makers "ratified and, at times encouraged" such conduct; and (3) the City's final policy makers failed to "adequately train, supervise, and discipline CPD officers. (*FAC ¶¶* 85–87, 89–91, 93–97.)

#### 1. Plaintiff has stated a claim for Monell liability based on an unconstitutional pattern and practice.

Mrs. Nuricumbo claims the City is liable under Monell because the CPD "acted pursuant to a widespread pattern and practice of corruption and police abuse." (*FAC ¶¶* 85–87.) In response, the City first argues that Mrs. Nuricumbo failed to specifically allege the existence of a longstanding practice of condoning police retaliation against citizens for political activity. (*City's MTD* 7:2–3.) Second, the City argues that Mrs. Nuricumbo also failed to allege facts showing that the alleged custom constituted the "moving force" behind the violation of her constitutional rights. (*Id.*, 7:13–15.).

To state a claim for Monell liability based on an unconstitutional pattern and practice, plaintiff must allege facts showing the defendants acted pursuant to a custom that is so "persistent and widespread" that it establishes a "permanent and well settled

city policy." <u>Monell</u>, 436 U.S. at 690–91.  A municipal policy exists when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986).  In the absence of an express policy, an unconstitutional pattern or practice may be inferred from pervasive evidence of "repeated constitutional violations" that are closely related to the alleged unconstitutional pattern and practice.  <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1349 (9th Cir.1992); <u>Oviatt v. Pearce</u>, 954 F.2d 1470, 1481 (9th Cir. 1992).

As discussed above, the FAC alleges Chief Tabarez attempted to have someone fired in retaliation for a lawsuit filed against the CPD arising from an alleged constitutional violation.  (*FAC* ¶ 44.)  She also contends Chief Tabarez had a notebook "containing information that clearly demonstrated a pattern of 'retaliation against people in the department who were'" attempting to "hold accountable a police officer with ties to those leading the City. . . ."   (*Id.* ¶ 37.)  At this stage in the litigation, the FAC's allegations are to be accepted as true and all inferences read in favor of Mrs. Nuricumbo.  Under this standard, the Court finds the FAC sufficiently alleges a CPD pattern and practice of retaliating against individuals for the exercise of the right to petition.

### 2. Plaintiff has failed to state a claim for <u>Monell</u> liability based on ratification by a final policymaker.

In support of her second cause of action under <u>Monell</u>, Mrs. Nuricumbo argues that the City of Calexico is liable for the CPD's conduct because "Tabarez and Duran specifically approved" the officers' filing of false charges against her.  (*FAC* ¶¶ 80–91.)  The City replies that the FAC fails to plead specific facts showing that either Tabarez or Duran qualified as final policymakers, a requisite for the imposition of <u>Monell</u> liability.  (*City's MTD* 7:22–27.)

<u>Monell</u> liability can be demonstrated through "decisions of a final policy-making official who commits the federal law violation himself or ratifies the unlawful act of a

delegate." Lytle v. Carl, 382 F.3d 978, 986 (9th Cir. 2004). To impose liability based on this theory, plaintiff must establish that a municipal employee bearing "final policy-making" authority ratified the violation of plaintiff's constitutional rights with actual knowledge of the violation. Christie v. Iopa, 176 F.3d. 1231, 1239 (9th Cir. 1999). In determining whether an official is a final policymaker, "courts consider whether the official's discretionary decisions are 'constrained by policies not of that official's making' and whether the official's decisions are 'subject to review by the municipality's authorized policymakers.'" Id., at 1236–37.

"[W]hether a particular official has final policy-making authority is a question of state law." Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989). Courts, therefore, look to applicable state laws and regulations to determine if the defendant is a final policymaker. See Lytle, 382 F. 3d 978 (examining school district regulations to determine if assistant superintendent was the final policymaker with respect to employment-related decisions). Additionally, "[a]uthority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority. . . ." Pembaur, 475 U.S. at 483.

As an initial matter, Mrs. Nuricumbo fails to cite any state law supporting her contention that Duran, as a sergeant, had final policymaking authority. In contrast, in Collins v. City of San Diego, 841 F.2d 337 (9th Cir. 1988), the Ninth Circuit found that a police sergeant is *not* a final policymaker under California law. There, a discharged female police officer filed suit against the City of San Diego for the sergeant's sexual harassment. Id. at 338. The court declined to impose Monell liability reasoning that "[a]lthough a police sergeant may have discretion to recommend hiring, firing, and discipline of employees, he or she is not the city official responsible for establishing final department policy in this area." Id. at 341.

Additionally, the FAC is devoid of facts indicating that such authority was delegated to Duran. Mrs. Nuricumbo alleges he, and other unidentified sergeants, were put "in charge of the investigations unit" and "put in charge of ensuring CPD officers

were adequately trained." (*FAC* ¶¶ 32, 39.)  The allegation that he was "put in charge" is too vague to suggest that the sergeants were final policymakers with respect to CPD investigations or training.  At best, the allegation suggests the sergeants were delegated discretion in running the units, but not that they established the general policies guiding officer investigations or training.  See Christie, 176 F.3d at 1236–1238 (explaining the distinction between delegating the discretion to act versus delegating final policymaking authority).  For these reasons, the Court finds Sergeant Duran is not a final policymaker for purposes of Monell liability.

Turning to Chief Tabarez, under California Government Code § 38630, "the City's police department is under the control of the Chief of Police."  Cal. Gov. Code § 38630(a); see also Fairley v. Luman, 281 F.3d 913, 918 (9th Cir. 2002).  Thus, Chief Tabarez is clearly a final policy maker for purposes of Monell liability.

However, in addition to demonstrating that Chief Tabarez is a final policymaker, the FAC must allege that he "approve[d] the subordinate's decision and the basis for it." Christie, 176 F.3d at 1239.  "Accordingly, ratification requires, among other things, knowledge of the alleged violation." Id. (citing Garrison v. Burke, 165 F.3d 565, 572 n.6 (7th Cir. 1999)).  But knowledge, alone, is not sufficient; instead, "a plaintiff must prove that the policymaker approved of the subordinate's act." Id.  Here, there are no allegations indicating that Chief Tabarez was aware that the officer Defendants falsified reports and evidence relating to Mrs. Nuricumbo's arrest in retaliation for her political activity.  Accordingly, the FAC fails to assert a Monell claim based on ratification.

### 3. Plaintiff has stated a claim for Monell liability based on the City's failure to train, supervise, and discipline.

In support of her third Monell cause of action, Mrs. Nuricumbo claims that the CPD's final policymakers were deliberately indifferent to the "obvious consequences of their failure to train CPD officers, sergeants, lieutenants, and other employees adequately." (*FAC* ¶¶ 93–97.)  The City, in turn, claims that the FAC lacks specific

allegations regarding insufficient training as it relates to the "filing of false charges against a citizen in retaliation for political views." (*City's MTD* 9:2–4.)

Inadequacy of police training may justify the imposition of Monell liability *only* where the municipality's "failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact." City of Canton Ohio v. Harris, 489 U.S. 378, 388 (1989). Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 410 (1997). To demonstrate deliberate indifference for purposes of failure to train, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." Connick v. Thompson, 563 U.S. 51, 62 (2011) (quoting Bd. of Cty. Comm'rs of Bryan Cty, 520 U.S. at 410).

Although somewhat vague, the FAC seems to allege that the CPD failed to train the sergeants, such as Duran, who were in charge of the investigations and internal affairs unit. (*FAC* ¶¶ 32, 34.) She also alleges that "[r]eport writing was particularly deficient" and presumably as a result "[o]fficers wrote inaccurate reports, they wrote false reports, and sometimes they refused to write any report. . . ." (*Id.* ¶ 36.) As discussed above, Mrs. Nuricumbo's section 1983 cause of action is based on the contention that the officer Defendants prepared false reports regarding the incident and, after arresting her, booked Mrs. Nuricumbo for various serious felonies in order to chill her political speech. Defendant do not contend a heightened pleading standard applies to Monell claims. Because the FAC's allegations indicate a lack of training regarding investigations and report writing, the Court finds Mrs. Nuricumbo has stated a Monell claim based on lack of training.[3]

---

[3] Plaintiff's opposition argues that the Monell claim for inadequate training is sufficient given the FAC's allegations concerning the general lack of training at the CPD. (*See Opp.* 12:3–12.) Plaintiff is incorrect because the alleged lack of training must relate to the constitutional violation that forms the basis for her section 1983 claim. See City of Canton, Ohio, 489 U.S. at 391 ("for liability to attach in this

### D. Bane Act and Negligence Claims

#### 1. Plaintiff's causes of action against the City and officer Defendants are not based on false arrest.

The City's argument in support of its motion to dismiss the Bane Act and negligence causes of action are based on the contention that the claims remain premised on false arrest and false imprisonment. Duran makes the same argument. For the reasons discussed section IIIA, above, the Court finds the argument unconvincing.

#### 2. Plaintiff's causes of action against Duran are sufficiently stated.

Under the Bane Act, plaintiff must allege that the defendant intentionally interfered, or attempted to interfere, with plaintiff's constitutional rights by "threats, intimidation, or coercion." Civ. Code, § 52.1, subd. (a). The plaintiff must allege "a showing of coercion independent from the coercion inherent in the wrongful detention itself." Shoyoye v. Cty. of Los Angeles, 203 Cal. App. 4th 947, 959 (2012).

Duran argues that a supervisor cannot be liable for the acts of his subordinates, relying on Austin B. v. Escondido Union School District, 149 Cal. App. 4th 860, 878 (2007). However, Mrs. Nuricumbo alleges Duran was personally involved in the violation of her constitutional rights. Although off-duty at the time, the FAC alleges Duran played an active role in bringing about her injury by directing the officers at the scene to, in essence, elicit false evidence "that would support a felony charge of assault with a deadly weapon." (*FAC* ¶ 57.) Ramirez's audio recorder allegedly captures this instruction, as well as the officers' attempts to elicit a statement from Mr. Nuricumbo that Mrs. Nuricumbo threw a brick at him, despite his multiple statements to the officers that

---

circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.") Her vague allegations regarding the general lack of training are not closely related to the ultimate injury.

he was "nowhere near" the brick when it was thrown. (*Id.* ¶ 58.) Accordingly, the Court finds the FAC adequately states a Bane Act claim against Duran.

With respect to Mrs. Nuricumbo's negligence cause of action, Defendant Duran again argues that the "entire negligence claim is premised on her false arrest." (*Duran's MTD* 14:26–28). The Court disagrees. Mrs. Nuricumbo's negligence cause of action against Duran is based on his negligent "failure to comply with CPD policies and procedures;" "instructing his subordinates to elicit false witness statements to support false felony charges;" failure to "adequately train, supervise, and control his subordinate[s];" and ratification of Plaintiff's treatment by subordinates. (*Opp*. 25:15–25). This conduct allegedly caused harm to Mrs. Nuricumbo. As such, the FAC has sufficiently stated a cause of action for negligence against Duran.

As for the negligent hiring, retention, supervision and control claim, Duran appears to argue that he cannot be held liable because he did not have final authority over the hiring, training, retention, supervision or control of the other officer Defendants. (*Duran's MTD* 16:24–27.) The Court agrees that Mrs. Nuricumbo has failed to demonstrate Duran had final authority over the defendants with respect to hiring and retention. However, the FAC alleges that Duran was their supervisor, and the allegations indicate that in instructing the officers to obtain false witness statements, he clearly was negligent in supervising them. There appears to be authority for holding a supervisor liable for failing to adequately supervise. See <u>C.A. v. William S. Hart Union High School Dist.</u>, 53 Cal.4th 861, 866 (2012) (recognizing cases where school physical education staff were found negligent for failing to supervise students). Accordingly, at this stage in the litigation, the Court finds Mrs. Nuricumbo has sufficiently stated a negligence claim against Duran for failing to supervise the officer Defendants who prepared the allegedly false reports and booked her for the felonies.

//
//
//

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motions to dismiss [Docs. 45, 46, 47] as to Mrs. Nuricumbo's third cause of action, "42 U.S.C. § 1983 – *Monell* – Ratification by Final Policymaker," with leave to amend, and **DENIES** the motions in all other respects. If Mrs. Nuricumbo chooses to file a second amended complaint, it must be filed on or before **March 9, 2016**.

**IT IS SO ORDERED.**

Dated:  February 25, 2016

_____
Hon. Thomas J. Whelan
United States District Judge